UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JILLIAN R. AGUILAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:19-CV-61-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Jillian Aguilar appeals the Social Security Administration's decision to deny her applications for disability insurance benefits and supplemental security income. Aguilar suffers from a host of severe medical issues, just some of which are insomnia, narcolepsy, fibromyalgia, degenerative disc disease of the lumbar spine, and carpal tunnel syndrome. [Tr. 15.][1] An administrative law judge found that Aguilar was not disabled and that she had the residual functional capacity (RFC) to perform sedentary work with some additional restrictions. More specifically, the ALJ found that Aguilar could sit for 6 hours of an 8 hour work day, and could stand or walk 2 hours. [Tr. 20.] Because this finding is not supported by substantial evidence, I will **REVERSE** the ALJ's decision and **REMAND.**

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 9.

**Discussion**

I'll start, as usual, with the standards that govern my decision-making in this appeal. My job is not to determine from scratch whether or not Aguilar is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not particularly demanding. In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But there has to be more than a "scintilla" of evidence. *Id.* This means that I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The ALJ found Aguilar suffers from eight severe impairments, but Aguilar's back pain seems to be the most debilitating for her. [Tr. 57.] Despite multiple lower back surgeries, continued medical treatment, injections, and even narcotic medication, Aguilar has complained of ongoing chronic low back pain for years, and imagining continues to show disc herniation in her lumbar spine. [Tr. 30-31, 441, 668, 670-71, 856,

678-873.] At the ALJ hearing, Aguilar testified that she could only drive for about 30 minutes, after which her back hurt and she had nerve pain that goes down both of her legs, and she needs to alternate the foot which operates the pedals about every 20 minutes. [Tr. 40-41.]

Aguilar is highly educated, with a bachelors degree in exercise science and a doctorate in physical therapy. [Tr. 41.] After holding several physical therapy jobs, Aguilar only worked part time after her alleged onset date. [Tr. 14.] At the last job she tried, Aguilar taught at the Huntington Learning Center for just one week. [Tr. 44, 46-49.] She had to quit because she could not sit for the 45-minute drive there and then the two-or-three hours at the job. [*Id.*] During the ALJ hearing, which lasted about an hour, Aguilar had to take a break to stand up. [Tr. 61.] Aguilar takes 12 medications, including Norco and three others for back pain, and these cause side effects for her including fatigue and difficulty concentrating. [Tr. 51-52, 54.]

In finding that Aguilar had the RFC to perform sedentary work with certain limitations (like never climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, crouching, kneeling, and crawling), the ALJ also found that: "[t]he record further states that the claimant's pain is alleviated when sitting (Ex. B31F/98). This is evidence that the claimant can stand or walk 2 hours of an 8-hour work day and sit for 6 hours of an 8 hour work day." [Tr. 20.] It is this finding, and the citation to one page out of the over 2,000 page record, which Aguilar claims is the result of "cherry picking" a single piece of evidence while ignoring other contrary evidence in the record.

It is well settled that an ALJ is prohibited from relying on evidence that supports his decision while ignoring evidence to the contrary. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (finding "the ALJ identified pieces of evidence in the record that supported her conclusion that [Plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

This case involves a classic example of cherry-picking. The one piece of evidence cited by the ALJ in support of his conclusion that Aguilar's pain is alleviated when sitting is contained in a note from an office visit to Dr. Ungar-Sargon, dated October 14, 2015. [Tr. 1492.] The note discusses Aguilar's complaints of pain in her right hip, thigh, leg, and foot, and also states she "complains of pain in the lower back, for the last 13 years, . . . The pain is persistent and constant and it gets worse with sitting, standing, walking and bending. Pain medications, sitting and lying down alleviates the pain." [Tr. 1492.] What this note is plainly saying is that Aguilar gets temporary relief from pain by sitting or lying down. But that is not to say that sitting does not also cause her pain. It does. Indeed, the note itself makes it clear that Aguilar's complaints are that both standing *and sitting* cause pain. [*Id.*]

In addition, there is testimony and other pieces of medical evidence that support Aguilar's contention that she could not sustain prolonged sitting, and would need to change positions frequently. Dr. Marder, an occupational doctor with UIC, opined that "[i]n a 6-7 hour work day, [Aguilar] can sit for a total of 4 hours with 50 minutes at a

4

time, stand for 1 to 2 hours with 20 minute duration at a time, and walk for 4-5 hours with frequent moderate distances" which he believed was below a level expected for a physical therapist. [Tr. 30.] He also stated that "[Aguilar's] back pain will also prevent her from sitting for [a] prolonged amount of time, requiring changing positions frequently." [Tr. 31.] While it is true that Aguilar noted that the pain was alleviated by sitting on some occasions [*see, e.g.*, Tr. 1453, 1458, 1474], the record is also replete with complaints that sitting actually exacerbated her pain. [*See, e.g.*, Tr. 683, 770, 777, 784, 792, 800, 1463, 1486, 1492, 1509, 1521.] In one instance, Aguilar specifically reported that the "[p]ain is worse when sitting greater than 30 minutes." [Tr. 1438.] Another time, she told the doctor "[c]hanging positions and pain medication helps relieve the pain." [Tr. 1448.] At another doctor visit, Aguilar reported that sitting for more than 30 minutes aggravates the pain. [Tr. 1488.] This is all consistent with Aguilar's hearing testimony that she could only drive for about 30 minutes. [Tr. 40.]

      The Commissioner argues that the ALJ was tasked with resolving the inconsistent statements that Aguilar's pain was both worse with sitting and relieved with sitting, and the ALJ did so by considering the record and coming to the conclusion that Aguilar could sit for six hours in a row. [DE 14 at 6-7.] However, the ALJ never acknowledged any evidence whatsoever supporting Aguilar's contention that sitting for an extended time compounded her pain, and never addressed at all the multiple references in the record to the complaints that Aguilar's pain was indeed sometimes

5

made worse by sitting. Instead, the ALJ leapt to the conclusion that sitting alleviated her pain, without showing us how he got there.

Here, the ALJ's failure to fully address the evidence related to Aguilar's ability to sit for prolonged periods of time during the workday is error that requires remand. *See Liggins v. Colvin*, 593 F. App'x 564, 568-69 (7th Cir. 2015) (remanding, in part, because the ALJ failed to provide a reasoned basis for excluding sitting limitation from claimant's RFC); *Arnett v. Astrue*, 676 F.3d 586, 593–94 (7th Cir. 2012) (remanding to agency for further proceedings to determine in the RFC the particular frequency of standing or sitting, or whether the claimant could be able to choose to sit or stand when she feels it is necessary); *Eakin v. Astrue*, 432 F. App'x 607, 611 (7th Cir. 2011) (ALJ's error compounded by failure to address claimant's "testimony about limitations arising from radiating pain in her hip, about her inability to sit and stand for extended periods of time, and about the frequency with which she needed to alternate positions"); *Millsap v. Berryhill*, No. 2:17-cv-82, 2018 WL 4214527, at *3-4 (N.D. Ind. Sept. 5, 2018) (remanding for the ALJ to address the evidence regarding Plaintiff's ability to sit and stand, and determine whether the RFC should include the need to alternate between sitting and standing).

In sum, I recognize that it is virtually impossible for an ALJ to address every piece of evidence in an expansive medical record. But in this case the ALJ simply turned an impermissible blind eye to multiple references in the record that prolonged sitting made Aguilar's pain worse. It seems to me that at most, Aguilar might be able to

6

work if she could change positions frequently, or have increased breaks to stretch, or have a sit/stand option. But the ALJ did not include any such sitting restrictions in the RFC. Perhaps this will make no difference in her ability to do sedentary work. But that will have to be decided on remand.

There is one final issue worth mentioning. The ALJ used an incorrect standard in evaluating Aguilar's testimony. The ALJ found Aguilar's allegations were not "completely consistent with the record as a whole." [Tr. 20.] As I recently recognized in *Ralston v. Saul*, No. 3:18-cv-996-PPS, 2019 WL 5558798, at *3-4 (N.D. Ind. Oct. 29, 2019), there is a line of case law from the Northern District of Illinois which has held that the "not entirely consistent" standard to evaluate a claimant's statements concerning their impairments is inconsistent with the Social Security regulations which require that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms *can reasonably be accepted as consistent* with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a) (emphasis added); *see, e.g., Minger v. Berryhill*, 307 F.Supp.3d 865, 872-73 (N.D. Ill. 2018); *Dunbar v. Berryhill*, No. 17 C 6278, 2018 WL 4095094, at *3 (N.D. Ill. Aug. 28, 2018); *Bancolita v. Berryhill*, No. 17 C 6576, 2018 WL 2731227, at *4 (N.D. Ill. 2018) (remanding where, among other errors, the ALJ's use of a "not entirely consistent" standard was too rigorous and did not align with the appropriate "reasonably accepted as consistent" standard). Because this case is being remanded on another basis, I need not decide whether this application of the incorrect standard in itself necessitates

7

remand. However, the ALJ is reminded to apply the correct standard in evaluating Aguilar's testimony on remand.

* * *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Aguilar, including that the ALJ discounted the severity of her pain because she engaged in minimal daily activities and the failure to include other limits in her RFC that relate to her hand and finger pain, fatigue and narcolepsy, and mental impairments. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: January 14, 2020.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**